# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No.: _____

**ALEJANDRO MOSQUEDA PAZ**,
p/k/a "ALMIGHTY,"

Plaintiff,

v.

**PRIMO BOYZ RECORDS LLC A/K/A PRIMO BOYZ
RE L.L.C**, **PRIMO BOYZ MUSIC PUBLISHING L.L.C.**,
and **JOSÉ POLANCO**,

Defendants.

_____/

## COMPLAINT

Plaintiff, ALEJANDRO MOSQUEDA PAZ p/k/a [1] "ALMIGHTY" ("Plaintiff," "Almighty"), by and through undersigned counsel, brings this Complaint against PRIMO BOYZ RECORDS LLC A/K/A PRIMO BOYZ RE L.L.C ("Primo Boyz Records"), PRIMO BOYZ MUSIC PUBLISHING L.L.C. ("Primo Boyz Music")(collectively "Defendant Primo Boyz"), and JOSÉ POLANCO ("Defendant Polanco"), collectively, "Defendants," and alleges as follows:

### I. NATURE OF THE ACTION

1. This action arises from a deliberate plan of exploitation and misconduct by Defendants, who induced Plaintiff to sign a one-sided, English-language contract, which he could not understand due to his limited English proficiency. The agreement was entered into under

---

[1] p/k/a - professionally or publicly known as.

1

pressure and as a result of material misrepresentations by Plaintiff's then-manager Eduardo Del Pilar, acting in concert with Defendants and their attorney.

2.      Despite receiving broad rights under a "Multiple Rights Agreement," Defendant Primo Boyz at the direction and under the control of Defendant Polanco have materially breached every core obligation of that purported agreement — failing to provide funding for albums, failing to fully pay royalties to Plaintiff, failing to manage Plaintiff's career, failing to release albums, failing to issue statements, failing to account for revenues, filing fraudulent Broadcast Music Inc. ("BMI") song splits and failing to provide support for the same. Defendants have instead continued to monetize Plaintiff's valuable content without Plaintiff's consent or adequate compensation.

3.      Defendants continue to wrongfully control Plaintiff's YouTube channel with more than 3.6 million subscribers, generating an estimated $87,000 per month, and have registered false royalty splits and ownership claims with BMI, attributing rights to individuals who never participated in the works.

4.      Plaintiff seeks damages in an amount of approximately $10 million or more, injunctive and declaratory relief, rescission of the unconscionable contract, and recovery of misappropriated revenue and intellectual property.

## II. JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Federal question jurisdiction also exists under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 *et seq.* (Lanham Act).

7.      In addition to the statutory bases for federal jurisdiction set forth in paragraphs 5 and 6, the parties have contractually consented to submit to the exclusive jurisdiction of the courts located in Miami-Dade County, Florida.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) and pursuant to the venue clause in the parties' agreement authorizing suit to be filed "in and before the courts within Miami-Dade County and the State of Florida."

### III. PARTIES

8.      Plaintiff Alejandro Mosqueda Paz, professionally known as "Almighty," is a Puerto Rican citizen and internationally recognized Latin trap and reggaeton artist.

9.      Plaintiff rose to prominence in the mid-2010s with a distinct lyrical style, quickly establishing himself as a powerful voice in the new wave of his genres. His breakout singles gained significant traction on streaming platforms, propelling him into collaborations with high-profile artists and producers.

10.      Almighty's early success included features and collaborations with global Latin artists such as Bad Bunny, Farruko, Nicky Jam, Wisin & Yandel, and others.

11.      Plaintiff became known not only for his lyrical intensity but also for addressing real-life themes in his music, garnering widespread popularity across Latin America, the U.S., and Europe. His catalog includes charting hits that have amassed hundreds of millions of streams.

12.      Plaintiff's success also includes over 3.6 million YouTube subscribers amazing over 1.2 billion streams since it opened its channel on YouTube with 146 videos. Plaintiff has over 5 million monthly listeners on Spotify.

13.     Plaintiff conducts business in this District.

14.     Defendant Primo Boyz Records LLC  a/k/a Primo Boyz RE L.L.C is a New Jersey limited liability company.

15.     Defendant Primo Boyz Music Publishing L.L.C. is a New Jersey limited liability company affiliated with and operated in concert with Primo Boyz Records.

16.     Defendant Polanco is the founder and operator of Primo Boyz Records and Primo Boyz Publishing.

## IV. FACTUAL ALLEGATION

17.     During the early stages of his career, Plaintiff came under the management of Eduardo Del Pilar, who assumed responsibility for overseeing bookings, production connections, and deal negotiations. Del Pilar positioned himself as a trusted advisor and gatekeeper to Plaintiff, overseeing business opportunities on behalf of Plaintiff.

18.     On or about 2018, Del Pilar introduced Plaintiff to representatives of Defendant Primo Boyz, specifically Defendant Polanco, representing the introduction as a major opportunity to "level up" Plaintiff's brand and exposure.

19.     Defendant Polanco personally participated in and directed the conduct alleged herein, including the misrepresentations made to Plaintiff about the nature and effect of the "Multiple Rights Agreement." Defendant Polanco, acting individually and through the business entities, represented that the agreement was standard and non-exclusive, and he did so knowing Plaintiff lacked English proficiency and legal counsel.

20.     Defendant Polanco held himself out to Plaintiff as a seasoned expert and "guru" in the music industry, claiming extensive knowledge of promotion, publishing, digital strategy, and

artist development. Defendant Polanco presented himself as the key to elevating Plaintiff's career to the next level, assuring Plaintiff that he had the experience, resources, and network necessary to manage and grow Plaintiff's brand globally.

21.     Before signing the agreement, Defendant released Plaintiff's first song "VACIO" on or about February 3, 2018.  VACIO quickly became a worldwide hit.

22.     On or about March 15, 2019, Plaintiff signed the "Multiple Rights Agreement" presented by Defendants and their legal counsel. Enclosed as *Exhibit "A"* is the Multiple Rights Agreement.

23.     The purported agreement was drafted exclusively in English, a language Plaintiff does not understand or speak. It was never translated into Spanish, Plaintiff's native language, nor reviewed with independent counsel. Del Pilar and Defendant Polanco on behalf of Defendant Primo Boyz assured Plaintiff that the purported agreement was "standard," "non-exclusive," and "beneficial," when in fact it contained highly restrictive and one-sided terms of which Plaintiff was not aware.

24.     The agreement purported to grant Defendant Primo Boyz sweeping and irrevocable rights in Plaintiff's name, likeness, preexisting and future recordings, compositions, publishing, social media accounts, merchandising, touring income, and more, without providing any clear or measurable term, without providing Plaintiff any authority to terminate the agreement, despite purporting to provide Defendant Primo Boyz's expansive authority to terminate in their "sole discretion," and all the while purporting to assign Plaintiff's power of attorney to Defendant Primo Boyz.

25.     At the time of signing, Plaintiff was still under Del Pilar's management. Del Pilar advised Plaintiff to sign the purported agreement without seeking legal counsel, failed to explain

the actual legal implications, and was acting in coordination with Defendants and their legal representatives.

26.     At no time prior to signing of the purported agreement was Plaintiff represented by legal counsel, nor was Plaintiff given the opportunity to review the purported agreement with an independent Spanish-speaking attorney.

27.     Plaintiff's signature was obtained under pressure and misinformation from both Del Pilar and Defendant Polanco on behalf of Defendant Primo Boyz.  The purported agreement was signed by Plaintiff the same day it was presented to him.

28.     Plaintiff delivered to Defendant Primo Boyz the "First Album," titled "La Bestia," which was commercially released in the United States on or about June 7, 2019, thereby commencing the purported "Initial Contract Period."

29.     Plaintiff delivered to Defendant Primo Boyz the "Second Album," titled "La Bestia – Part 1," which was commercially released in the United States on or about November 6, 2020.

30.     Plaintiff delivered to Defendant Primo Boyz the "Third Album," titled "La Bestia – Part 2," which was commercially released in the United States on or about December 4, 2020.

31.     Plaintiff delivered to Defendant Primo Boyz the "Fourth Album," titled "Genelipsis," which was commercially released in the United States on or about January 30, 2022.

32.     In addition to the four albums, since 2019, Plaintiff has provided Defendant Primo Boyz with over forty-eight (48) fully produced songs.

33.     Defendant Primo Boyz never released any additional albums from the forty-eight additional songs, despite having the material in their possession and the purported contractual right to do so.

34.     The purported agreement provides for four (4) consecutive optional extension periods, each lasting twelve (12) months after the U.S. commercial release of the album delivered for that period, without gaps between periods.

35.     Notwithstanding the above and to the extent the purported agreement grants to Defendant Primo Boyz an unlimited period of time to exercise an optional extension, the agreement is invalid and/or subject to rescission on grounds of unconscionability and/or because the contract is illusory, holding Plaintiff to an indefinite period of performance without any guarantee of performance by Defendant Primo Boyz.  Alternatively, the purported contract expired on January 30, 2023—twelve (12) months after the release of the "Fourth Album"—because a "Fifth Album" was never released, and the purported agreement terminated by its own terms.

36.     Despite the fact that Plaintiff provided Defendant Primo Boyz with forty-eight (48) additional songs, Defendant Primo Boyz, at the direction of Defendant Polanco acted in bad faith by withholding release of the forty-eight additional songs and refusing to exercise any option to release a "Fifth Album," thereby attempting to unlawfully extend the term beyond January 30, 2023, and by failing to perform Defendant Primo Boyz's obligations to manage, promote, and financially support Plaintiff.

37.     Prior to and during the purported agreed upon term, Plaintiff actively created and released multiple original singles and collaborations, including but not limited to "VACIO," "FLUYE," "ERROR," "INDIFFERENTE," and other commercially successful singles. These

works were released to the public and monetized via streaming platforms before any agreement was signed with Defendant Primo Boyz. Notwithstanding this, Defendant Primo Boyz retroactively asserted ownership and royalties over such works, falsely claiming them as "work made for hire" and registering rights to them with BMI and digital distributors.

38.     Defendant Primo Boyz provided little to no management services to Plaintiff, despite numerous promises in the purported agreement to manage, promote, and advance Plaintiff's career.

39.     Defendant Primo Boyz have failed to render biannual royalty statements, provide audit access, pay royalties for streams, syncs, sales, or YouTube monetization, and account for third-party licensing and publishing revenue, all to the detriment of Plaintiff.

40.     Plaintiff remained unaware of the extent of Defendant Primo Boyz's misconduct—including concealed royalty practices, delayed album releases, and misleading representations about the contract—until interactions in 2022, when Plaintiff sought greater transparency regarding royalties and was met with repeated delays and denials of access to financial records and platform data.

41.     Defendant Primo Boyz at the direction of Defendant Pokanco actively concealed their breaches and misrepresentations by withholding royalty statements and audit materials, preventing Plaintiff from learning the amount and timing of unpaid revenues and exploiting Plaintiff's lack of English proficiency and financial isolation to obscure critical terms of the agreement and the timing of breaches.

42.     Moreover, Defendant Primo Boyz's ongoing failures to fully pay royalties, release albums, and issue statements constitute continuing breaches of the "Multiple Rights Agreement."

43.     Defendants actively concealed their breaches and misrepresentations by withholding information, providing false assurances that money was forthcoming, and exploiting Plaintiff's lack of English proficiency and financial isolation.

44.     To date, Plaintiff has received approximately $80,000 in total compensation under the agreement — a grossly inadequate amount compared to the substantial commercial success of his catalog and platform revenue.

45.     Defendant Primo Boyz have continued to distribute and monetize Plaintiff's catalog across all digital platforms without just compensation.

46.     Plaintiff just recently learned that BMI royalty splits list individuals who never contributed creatively, falsely inflating Defendants' shares and diminishing Plaintiff's rightful earnings.

47.     Several of Plaintiff's works—including "VACIO," "FLUYE," and "INDIFFERENTE,"—were written and released before March 2019, yet Defendant Primo Boyz claimed retroactive ownership.

48.     Plaintiff has been locked out of his YouTube account and other platforms, and those accounts are now operated or monetized by third parties with ties to Defendants.

49.     Despite their breach, Defendant Primo Boyz sent a cease-and-desist letter dated April 25, 2025, falsely asserting enforcement rights under the invalid, void, unenforceable purported agreement.

50.     Defendant Primo Boyz never opted to exercise their purported option to further extend the purported agreement, and even if they had, any such extension would have expired in

March 2024 as the options were consecutive each commencing upon the expiration of the prior option.

51.     Plaintiff never executed or consented to any extension or renewal of the purported agreement, and no new agreement, extension, or written notice of renewal has been produced by Defendant Primo Boyz.

52.     Despite having no legal right to do so, on May 16, 2025, an individual purporting to act on behalf of Defendant Primo Boyz — or possibly impersonating the Plaintiff — submitted a copyright takedown notice to YouTube concerning a new release titled "NENA APAGA EL CEL," a collaborative track between Bastian Alejandro D'Amonte Henriquez (p/k/a AK4:20) and Almighty, composed and released in 2025.

53.     The takedown request falsely identified the claimant as "Todopoderoso," using the email address westrada72@gmail.com, and caused the removal of the video from Plaintiff's and AK4:20's official YouTube channels.

54.     The removal was unauthorized, and neither Plaintiff nor any legitimate rightsholder affiliated with him submitted such a request. The composition in question was created well after the expiration of any purported contractual rights claimed by Defendant Primo Boyz and was wholly original to Plaintiff and his collaborators.

Hola AK4:20:

Recibimos una solicitud de eliminación por incumplimiento de derechos de autor por tu vídeo. Según la legislación de derechos de autor aplicable, lo quitamos de YouTube:

**Título del vídeo:** AK4:20 FT ALMIGHTY - NENA APAGA EL CELL
**URL del vídeo:** https://www.youtube.com/watch?v=n3YXy2wnX-A
**Contenido usado:** Nena Apaga el Cel
**Contenido encontrado en:** Todo el vídeo
**Persona/entidad que solicitó la eliminación:** Todopoderoso
**Información de contacto:** westrada72@gmail.com

55.     This act represents a knowing misrepresentation under the Digital Millennium Copyright Act (DMCA) and a continuation of the pattern of fraudulent enforcement and abuse of intellectual property controls, for the purpose of suppressing Plaintiff's career and monetizing his identity without consent.

56.     To the extent the purported agreement is valid, not void, or otherwise enforceable, all conditions precedent have been complied with, have been excused, or have otherwise been waived.

## V. CAUSES OF ACTION

### Count I – Declaratory Judgment: Unconscionability and Invalidity of Contract
### (Against Defendant Primo Boyz)

57.     Plaintiff realleges and incorporates all preceding paragraphs 1–56 as if fully set forth herein.

58.     The "Multiple Rights Agreement" is unconscionable under Florida law because it is procedurally and substantively oppressive.

59.     The "Multiple Rights Agreement" is procedurally unconscionable at least because it is drafted only in English, without translation, or meaningful opportunity for Plaintiff to negotiate or consult with Spanish-speaking counsel.

60.     The "Multiple Rights Agreement" is substantively unconscionable at least because it granted Defendant Primo Boyz irrevocable assignment of all copyrights in perpetuity, broad power of attorney, and one-sided economic terms, with no guarantee of performance by Defendant Primo Boyz, disproportionately and severely favoring Defendant Primo Boyz.

61.     The assignment of Plaintiff's copyrights, and the power of attorney clause, together with the indefiniteness of the term of the purported agreement, are so one-sided as to shock the conscience and deprive Plaintiff of any meaningful bargaining power.

62.     Enforcement of these provisions would be unfair and against public policy.

63.     The "Multiple Rights Agreement" is also invalid, void, or unenforceable at least because it is illusory or lacks consideration, to the extent that Defendant Primo Boyz contend that they had an indefinite period of time to exercise their purported option to extend the "Multiple Rights Agreement," at least because, such a purported agreement would hold Plaintiff to an indefinite period of performance without any guarantee of performance by Defendant Primo Boyz.

64.     A substantial and immediate legal controversy exists between Plaintiff and Defendant Primo Boyz concerning the parties' respective rights, obligations, and claims to intellectual property, contractual authority, and revenue derived from Plaintiff's music, brand, and likeness.

65.     Defendant Primo Boyz assert continuing ownership, licensing, and enforcement rights under a "Multiple Rights Agreement" executed in March 2019, including broad assignments of copyrights, trademarks, and control of digital platforms.

66.     Plaintiff alleges that: the purported agreement was procured by fraud and misrepresentation; the purported agreement is unconscionable, grossly one-sided, and drafted in a language that Plaintiff does not understand; the purported agreement lacks mutuality of obligation or consideration, and is illusory; to the extent a valid and enforceable agreement exists, it has been materially breached by Defendant Primo Boyz and, in any event, expired by its own terms no later than March 2024;  no valid renewal or extension of the purported agreement was ever executed; and Defendant Primo Boyz continue to assert rights they no longer hold, including through false takedown notices and digital impersonation.

67.     Defendant Primo Boyz's continued assertion of rights — including the submission of a false YouTube takedown in 2025 for a song composed and released after the expiration of the agreement, as well as the submission of a cease-and-desist letter to Plaintiff — demonstrates an ongoing, good-faith dispute that requires immediate judicial resolution.

68.     Accordingly, Plaintiff seeks a declaration from this Court pursuant to 28 U.S.C. § 2201, to eliminate uncertainty and prevent further harm to Plaintiff's career and commercial interests.

69.     Plaintiff seeks a declaration that: the purported agreement is void, rescinded, and/or unenforceable; all copyrights and trademarks belong to or revert to Plaintiff, including any works created before, during, or after the purported contract term; and Defendant Primo Boyz have no rights to use, exploit, monetize, license, or enforce any rights related to Plaintiff's works, likeness, or brand.

70.     Plaintiff seeks a declaration from this Court that the "Multiple Rights Agreement" is procedurally and substantively unconscionable; the purported agreement—or specific provisions thereof, including the irrevocable assignment clauses and power of attorney—is void,

unenforceable, and against public policy; and that Defendant Primo Boyz may not enforce any rights purportedly granted under the unconscionable provisions.

**WHEREFORE**, Plaintiff respectfully requests that the Court declare the "Multiple Rights Agreement" void, unconscionable, and unenforceable; confirm that all rights in Plaintiff's works, brand, and likeness belong to Plaintiff; and grant such other and further relief as the Court deems just and proper.

## Count II – Rescission of Contract
### (Against Defendant Primo Boyz)

71.     Plaintiff realleges and incorporates all preceding paragraphs 1–56 as if fully set forth herein.

72.     The "Multiple Rights Agreement" should be rescinded at least because it is unconscionable in that it is grossly one-sided, oppressive, and was obtained under grossly unequal bargaining power.

73.     The "Multiple Rights Agreement" should be rescinded at least because it is illusory or lacks consideration, to the extent that Defendant Primo Boyz contend that they had an indefinite period of time to exercise their purported option to extend the "Multiple Rights Agreement," at least because, such a purported agreement would hold Plaintiff to an indefinite period of performance without any guarantee of performance by Defendant Primo Boyz.

74.     The "Multiple Rights Agreement" should be rescinded at least because Defendant Primo Boyz's materially breached the purported agreement by failing to pay royalties, issue statements, or account for revenues, thus excusing Plaintiff's performance.

75.     Rescission is warranted because the entire "Material Rights Agreement" is tainted by Defendant Primo Boyz's misconduct and cannot be reformed to reflect fair and conscionable terms.

76.     Filing of this complaint constitutes notice of recission of the purported agreement.

77.     Plaintiff has not received any benefits that can be restored to Defendant Primo Boyz and, quite the opposite, Defendant Primo Boyz have failed to provide Plaintiff benefits under the purported agreement.

78.     In the alternative to Plaintiff's legal claims, Plaintiff has no adequate remedy at law, thereby justifying rescission of the "Multiple Rights Agreement."

79.     Upon rescission, all rights, titles, and interests in Plaintiff's works, name, likeness, and digital platforms should revert to Plaintiff, and Defendant Primo Boyz should be required to disgorge all revenues collected under the Agreement.

**WHEREFORE**, Plaintiff respectfully requests that the Court rescind the "Multiple Rights Agreement," declare all rights in Plaintiff's works, name, likeness, and digital platforms to belong to Plaintiff, order Defendant Primo Boyz to disgorge all revenues/profits obtained under the agreement or otherwise, and grant such other and further relief as the Court deems just and proper.

### Count III – Breach of Contract
### (Against Defendant Primo Boyz)

80.     Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

81.     To the extent the "Multiple Rights Agreement" is valid or enforceable, Defendant Primo Boyz were obligated to pay royalties to Plaintiff based on a defined percentage of "Net Receipts" from all exploitations of Plaintiff's works, including streams, downloads, licensing,

merchandise, and touring; render royalty statements semi-annually; provide access to audit and inspect books and records; actively promote, distribute, and commercialize Plaintiff's catalog in good faith; and manage and account for third-party licensing agreements in accordance with industry standards.

82.     Despite these purportedly express obligations, Defendant Primo Boyz have materially breached the agreement by failing to issue any royalty statements since execution of the agreement; failing to pay any royalty income to Plaintiff beyond a nominal advance of approximately $80,000, denying Plaintiff access to financial records or the right to audit, exploiting Plaintiff's works and brand without transparency, accounting, or consent, and failing to act in good faith to promote, manage, or support Plaintiff's career.

83.     In addition, Defendant Primo Boyz wrongfully claimed ownership over pre-existing works created before the agreement, and have continued to monetize those works despite the absence of a valid assignment.

84.     Defendant Primo Boyz's willful breaches deprived Plaintiff of his contractual rights and the fair value of his intellectual property, while unjustly enriching themselves.

85.     Plaintiff provided Defendant Primo Boyz with written notice of the breach, allowed an opportunity to cure, as required by the parties' agreement, but Defendant Primo Boyz continued to breach the agreement.

86.     Plaintiff fully performed under the agreement or was excused from further performance as a result of Defendant Primo Boyz's prior material breaches.

87.     Defendant Primo Boyz's repeated failures to pay royalties, release albums, and provide required statements reflect a pattern of ongoing contractual violations, with each instance further depriving Plaintiff of the benefits owed under the agreement.

88.     As a direct and proximate result of Defendant Primo Boyz's breaches, Plaintiff has suffered damages in an amount to be determined, including lost royalties, streaming revenue, licensing income, reputational harm, and diminished career opportunities and attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant Primo Boyz, and award compensatory and consequential damages, including unpaid royalties, lost revenues, reputational and career harm, and disgorgement of profits; attorneys' fees and costs as permitted by law; and such other and further relief as the Court deems just and proper.

### Count IV – Anticipatory Repudiation
### (Against Defendant Primo Boyz)

89.     Plaintiff realleges and incorporates all preceding paragraphs 1–56 as if fully set forth herein.

90.     Under the purported agreement, Defendant Primo Boyz agreed to manage Plaintiff's career, release and promote his recordings, account for and pay royalties and advances in a timely manner, and release albums delivered by Plaintiff.

91.     Defendant Primo Boyz's conduct—specifically, their complete failure to provide any management or promotional services, their failure to release a "Fifth Album," or the forty-eight (48) additional songs provided by Plaintiff in 2022, and their withholding of financial advances, royalties, and statements—constitutes an unequivocal refusal to perform their obligations under the purported agreement.

92.     To the extent a contractual relationship exists, Defendant Primo Boyz clearly and unequivocally manifested an intent not to perform their contractual obligations, entitling Plaintiff to treat the contract as terminated and to pursue all available remedies.

93.     To the extent a contractual relationship exists, Defendant Primo Boyz's repudiatory conduct occurred before Plaintiff's final scheduled delivery obligations were due, thereby entitling Plaintiff to treat the purported agreement as terminated as of the date of repudiation.

94.     As a direct and proximate result of Defendant Primo Boyz's anticipatory repudiation, Plaintiff has incurred damages, including but not limited to lost royalties, lost promotional and career opportunities, reputational harm, and other losses to be proven.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant Primo Boyz, and award damages for anticipatory repudiation, including lost royalties, promotional and career opportunities, lost profits, attorneys fees, and such other and further relief as the Court deems just and proper.

### Count V – Breach of Fiduciary Duty
### (Against All Defendants)

95.     Plaintiff realleges and incorporates all preceding paragraphs 1–56 as if fully set forth herein.

96.     Under the "Multiple Rights Agreement," Defendant Primo Boyz obtained an irrevocable power of attorney to act in Plaintiff's name and control his assets and contracts.

97.     This power of attorney created a fiduciary relationship, obligating Defendant Primo Boyz to act in Plaintiff's best interests, to exercise loyalty, care, and to avoid self-dealing.

98.     Defendant Polanco reinforced this fiduciary relationship by holding himself out as a music industry "guru" with the expertise, resources, and connections needed to elevate Plaintiff's career, assuring Plaintiff that Defendants would manage, promote, and protect Plaintiff's interests. Plaintiff, a native Spanish speaker with limited business experience, reasonably relied on these representations in entrusting Defendants with broad authority over his career and assets.

99.     Defendants breached their fiduciary duties by: using the power of attorney to negotiate, sign, and enforce contracts harmful to Plaintiff; locking Plaintiff out of his YouTube and social media accounts and monetizing them for Defendants' benefit; submitting false DMCA takedown notices in Plaintiff's name to suppress Plaintiff's releases; and registering false royalty splits and ownership claims with BMI, diluting Plaintiff's earnings.

100.    As a result of these breaches, Plaintiff has suffered financial losses, reputational harm, and deprivation of control over his assets and career.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and award actual damages, disgorgement of profits, attorneys' fees, and such other and further relief as the Court deems just and proper.

### Count VI – Unjust Enrichment
### (Against All Defendants)

101.    Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

102.    To the extent any contractual relationship between Plaintiff and Defendant Primo Boyz is deemed to exist and is not unenforceable, rescinded, expired, or void due to fraud, breach, or illegality, Plaintiff brings this claim in the alternative to breach of contract.

103.    Plaintiff invested substantial time, labor, creativity, and goodwill in building his career, brand, and catalog of original works, which include charting singles, commercial albums, and collaborations with major international artists.

104.    Defendants knowingly and voluntarily accepted the benefits of Plaintiff's efforts by exploiting his creative output, persona, likeness, and digital presence for their own commercial gain. These benefits include, but are not limited to, streaming and licensing revenue from

Plaintiff's music; YouTube monetization from content and accounts controlled by Defendants; unauthorized claims of ownership in rights management and publishing systems (e.g., BMI, YouTube Content ID); and the commercial use of the brand value associated with Plaintiff's name "Almighty," which Defendants used to falsely endorse their platforms and releases.

105.    Defendant José Polanco further induced Plaintiff's reliance by holding himself out as an experienced music industry "guru" with the ability to elevate Plaintiff's career. In doing so, Polanco exploited Plaintiff's trust and lack of English proficiency to secure control over Plaintiff's works, likeness, and platforms for Defendants' benefit.

106.    Defendants have retained and continue to retain millions of dollars in revenue derived directly from Plaintiff's works, identity, and platforms without providing any contractual, equitable, or legal compensation. Defendant José Polanco, as the founder, operator, and controlling member of Defendant Primo Boyz, personally profited from the unauthorized exploitation of Plaintiff's creative assets. These profits include, but are not limited to, direct receipt of income, control over monetized digital accounts, and the use of Plaintiff's intellectual property and brand to promote Defendant Polanco's own business dealings.

107.    The benefits Defendants received were obtained through wrongful conduct, including fraud, misrepresentation, coercion, and breach, and were voluntarily retained with full knowledge of their origin and value.

108.    It would be inequitable and contrary to principles of justice and good conscience to allow Defendants to retain these benefits without paying for them, as they profited at Plaintiff's expense without authorization or fair compensation.

109.    Accordingly, equity demands that Defendants be required to make restitution to Plaintiff and disgorge all sums unjustly retained as a result of their unauthorized exploitation of Plaintiff's creative and commercial assets.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and order restitution and disgorgement of all revenues/profits and benefits unjustly retained from the unauthorized use of Plaintiff's works, name, likeness, and brand; and grant such other and further relief as the Court deems just and proper.

### Count VII – Fraudulent Inducement
### (Against All Defendants)

110.    Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

111.    In or around early 2018, Plaintiff was introduced to Defendants by his then-manager, Eduardo Del Pilar, who held himself out as a trusted advisor and was responsible for negotiating deals on Plaintiff's behalf.

112.    Plaintiff, a native Spanish speaker with no ability to read, speak or understand English, was presented with an English-language "Multiple Rights Agreement" drafted by Defendants and their counsel. Defendants and Del Pilar falsely represented that the agreement was "standard," "non-exclusive," and in Plaintiff's best interest.

113.    Defendant Jose Polanco further enhanced Plaintiff's reliance by portraying himself as an experienced music industry "guru" with unique knowledge, connections, and resources to grow Plaintiff's brand and commercial success. Defendant Polanco represented that Defendants were uniquely positioned to manage Plaintiff's career, and that signing the agreement was a necessary step toward broader opportunities.

114.    These representations were false and material. In reality, the agreement granted irrevocable rights to Defendants over all of Plaintiff's past, present, and future musical compositions, recordings, and likeness; included a power of attorney clause giving Defendants legal authority to act in Plaintiff's name without consent; and was exclusive, assignable, and allowed Defendants to control Plaintiff's brand, income, and platforms.

115.    Defendants and Del Pilar knew or should have known that their statements were false. They intentionally withheld and concealed the agreement's true nature to induce Plaintiff into signing it without informed consent.

116.    Plaintiff was never provided a Spanish translation of the agreement, nor given an opportunity to consult with an independent Spanish-speaking attorney. Defendants and Del Pilar made these false statements and material omissions with the intent that Plaintiff rely on them.

117.    At the time of execution, Plaintiff was vulnerable, inexperienced in the business aspects of the music industry, and relied entirely on the guidance of Del Pilar and the representations of Defendants. Plaintiff reasonably and justifiably relied on those statements in signing the agreement.

118.    Plaintiff would not have signed the "Multiple Rights Agreement" had he been accurately informed of its contents. Defendants' fraudulent inducement directly and proximately caused Plaintiff substantial harm.

119.    Plaintiff's reliance was reasonable under the circumstances, particularly given the language barrier, his trust in Del Pilar, and the deliberate concealment by Defendants.

120.    Defendants' concealment of material terms and misrepresentations at the time of execution of the agreement were compounded by language barriers and Plaintiff's reliance on the

assurances of those he trusted.  The nature and effect of the agreement's material terms were not readily apparent to Plaintiff as they were neither explained nor translated to him.

121.    As a result of this fraudulent inducement, Plaintiff has been deprived of his intellectual property rights, financial earnings, creative freedom, and commercial opportunities, and has suffered damages exceeding approximately $10 million.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and award damages for fraudulent inducement, including loss of intellectual property, revenues, and commercial opportunities; and grant such other and further relief as the Court deems just and proper.

### Count VIII – Conversion
### (Against All Defendants)

122.    Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

123.    Plaintiff owns and has the legal right to control various forms of intellectual property and digital assets, including but not limited to:

124.    Musical compositions and sound recordings authored solely or jointly by Plaintiff;

125.    Royalties and revenue derived from streaming, digital sales, publishing, and licensing;

126.    Access to and control of Plaintiff's YouTube channel, social media platforms, and related monetized content; and

127.    Rights in Plaintiff's name, image, and likeness.

128.    Defendants have intentionally and unlawfully exercised dominion and control over these assets and accounts without Plaintiff's consent, including: locking Plaintiff out of his

YouTube and social media accounts; collecting and retaining royalty and licensing income owed to Plaintiff; submitting takedown claims in Plaintiff's name or on his behalf without authorization; and claiming ownership of works not covered by the purported agreement, including works released before the purported agreement or after its expiration.

129.    Such control is unauthorized and inconsistent with Plaintiff's rights of ownership, and was exercised with knowledge of Plaintiff's entitlement to those assets.

130.    Defendants have refused to return, release, or account for such property despite Plaintiff's demands.

131.    As a direct and proximate result of Defendants' conversion, Plaintiff has suffered financial losses, reputational damage, and deprivation of control over his career and intellectual property.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and award damages for conversion, including the value of misappropriated intellectual property, lost revenues, and reputational harm; and grant such other and further relief as the Court deems just and proper.

**Count IX – Misrepresentation Under The Digital Millennium Copyright Act
(17 U.S.C. § 512(f))
(Against All Defendants)**

132.    Plaintiff realleges and incorporates all preceding paragraphs 1–56 as if fully set forth herein.

133.    In or about May 2025, an individual acting at the direction of Defendants — or potentially impersonating Plaintiff — submitted a copyright takedown request to YouTube,

asserting ownership over the composition and video "NENA APAGA EL CEL," a 2025 collaboration between Bastian Alejandro D'Amonte Henriquez (p/k/a AK4:20) and Plaintiff.

134.    The work in question was composed and released in the absence of, or after the expiration of, any valid contractual relationship between Plaintiff and Defendants. No renewal of the purported agreement was ever executed by Plaintiff, and Defendants had no legal or contractual right to claim ownership or control of "NENA APAGA EL CEL."

135.    The takedown request listed a claimant entity identified as "Todopoderoso," using the contact address westrada72@gmail.com, and claimed complete control of the underlying musical content in bad faith.

136.    Pursuant to 17 U.S.C. § 512(f), any person who knowingly misrepresents that material or activity is infringing shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer.

137.    The false claim resulted in: the removal of Plaintiff's and his collaborators' video from YouTube; a copyright strike on collaborator AK4:20's channel; direct harm to Plaintiff's reputation and ability to commercially release his work; and loss of income and exposure resulting from the unlawful takedown.

138.    Defendants' conduct was willful, malicious, and part of an ongoing pattern of suppressing Plaintiff's access to his content and platforms.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and award damages, including lost income, reputational harm, attorneys' fees, and costs pursuant to 17 U.S.C. § 512(f); and grant such other and further relief as the Court deems just and proper.

**Count X – Trademark Infringement / Unfair Competition**
**(15 U.S.C. § 1125(a))**
**(Against Defendant Primo Boyz)**

139.     Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

140.     Since at least 2016, Plaintiff has used the professional name "Almighty" in connection with his musical recordings, performances, branding, merchandise, and digital presence. This name has become widely associated with Plaintiff in the Latin music industry.

141.     Through continuous and widespread use in commerce, including across social media platforms, streaming services (e.g., Spotify, Apple Music, YouTube), and in collaboration with globally recognized artists, Plaintiff has acquired common law trademark rights in the name "Almighty."

142.     "Almighty" has acquired significant secondary meaning and goodwill among consumers in the United States, Latin America, and internationally, and is recognized as a unique commercial identifier of Plaintiff's services and persona.

143.     Defendant Primo Boyz, despite the expiration and/or breach of the purported underlying agreement, have continued to use the name "Almighty" without authorization to distribute, brand, promote, and monetize music and content across various platforms.

144.     Defendant Primo Boyz have also used Plaintiff's image, name, and likeness in connection with third-party monetization, social media pages, YouTube accounts, and digital advertising — creating the false impression that Plaintiff endorses or is affiliated with their current business activities.

145.    This conduct constitutes trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), as it is likely to cause confusion among consumers and dilute the value of Plaintiff's personal brand.

146.    Defendant Primo Boyz's actions are willful, intentional, and designed to capitalize on Plaintiff's reputation, audience, and commercial success.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant Primo Boyz, and award damages for trademark infringement and unfair competition, including lost revenues, reputational harm, and unjust enrichment; damages under the Lanham Act, grant injunctive relief to prevent further unauthorized use of Plaintiff's name and likeness; and award attorneys' fees and such other and further relief as the Court deems just and proper.

### Count XI –False Designation of Origin
### (15 U.S.C. § 1125(b))
### (Against Defendant Primo Boyz)

147.    Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein.

148.    Since at least 2016, Plaintiff has used the professional name "Almighty" in connection with his musical recordings, performances, branding, merchandise, and digital presence. This name has become widely associated with Plaintiff in the Latin music industry.

149.    Through continuous and widespread use in commerce, including across social media platforms, streaming services (e.g., Spotify, Apple Music, YouTube), and in collaboration with globally recognized artists, Plaintiff has acquired common law trademark rights in the name "Almighty."

150.   "Almighty" has acquired significant secondary meaning and goodwill among consumers in the United States, Latin America, and internationally, and is recognized as a unique commercial identifier of Plaintiff's services and persona.

151.   Defendant Primo Boyz, despite the expiration and/or breach of the purported underlying agreement, have continued to use the name "Almighty" without authorization to distribute, brand, promote, and monetize music and content across various platforms.

152.   Defendant Primo Boyz have also used Plaintiff's image, name, and likeness in connection with third-party monetization, social media pages, YouTube accounts, and digital advertising — creating the false impression that Plaintiff endorses or is affiliated with their current business activities.

153.   Defendant Primo Boyz's use of the Plaintiff's mark as alleged herein constitutes the use of false designations of origin in commerce and false representations in commerce that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Primo Boyz with Plaintiff or Plaintiff's mark, or as to the origin, sponsorship, or approval of Defendant Primo Boyz's services.

154.   Defendant Primo Boyz's actions are willful, intentional, and designed to capitalize on Plaintiff's reputation, audience, and commercial success.

155.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Primo Boyz, and award damages for false designation of origin, including lost revenues, reputational harm, and unjust enrichment; damages under the Lanham Act, grant injunctive relief to prevent further unauthorized use of Plaintiff's name and likeness; and award attorneys' fees and such other and further relief as the Court deems just and proper.

**Count XII – Accounting**
**(Against All Defendants)**

156.    Plaintiff realleges and incorporates all preceding paragraphs 1-56 as if fully set forth herein

157.    At all relevant times, Defendants, including Defendant Polanco, individually and in his capacity as the principal and operator of Defendant Primo Boyz, exercised exclusive control over the financial, publishing, distribution, and digital platform relationships through which Plaintiff's music, image, and likeness were commercially exploited.

158.     Defendants alone possess access to material financial records, including but not limited to: royalty statements, distributor and platform payments, licensing agreements, YouTube monetization reports, and other documentation reflecting income derived from Plaintiff's catalog, brand, and performances.

159.    The relationship between the parties—whether arising out of the underlying agreement or through their conduct—has resulted in a course of dealing that involves extensive and complex financial transactions across multiple revenue streams, including digital streaming, licensing, merchandising, touring, and content monetization.

160.    Despite repeated requests, Defendant Primo Boyz, at the direction of Defendant Polanco, have failed and refused to provide Plaintiff with any accounting, royalty statements, or financial disclosures, thereby preventing Plaintiff from determining the full extent of income earned from the exploitation of his work and likeness.

161.    Plaintiff has no adequate remedy at law because the nature and extent of compensation owed cannot be ascertained without access to Defendants' books, records, and accounting systems. Without such information, Plaintiff is unable to determine the precise amount of revenue collected or wrongfully withheld.

162.    Plaintiff seeks a full accounting of all revenues, assets, and income derived directly or indirectly from: Plaintiff's sound recordings and compositions; licensing and publishing deals; YouTube, Spotify, Apple Music, and other streaming services; content ID monetization; merchandising, touring, and endorsements associated with Plaintiff's brand; and use of Plaintiff's name, image, and likeness.

163.    The requested accounting is necessary to calculate the amounts wrongfully withheld and to support Plaintiff's claims for damages, restitution, and injunctive relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against all Defendants, and order a full and complete accounting of all revenues, assets, and income derived from the exploitation of Plaintiff's works, name, likeness, and brand; and grant such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

In summary, Plaintiff respectfully requests that the Court:

1.    Declare that Plaintiff is the sole owner of all disputed intellectual property, and that the "Multiple Rights Agreement" is invalid, void, unenforceable, or terminated, or in the alternative, that Defendants materially breached, or anticipatorily breached, the "Multiple Rights Agreement," and that Plaintiff did not breach the purported agreement;

2.    Enter judgment for actual, statutory, compensatory damages in excess of approximately $10,000,000;

3.    Award punitive damages resulting from Defendants' intentional, reckless, or malicious conduct;

4.    Grant injunctive relief enjoining Defendants from further use, infringement, or exploitation of Plaintiff's intellectual property rights;

30

5.   Order a full accounting;

6.   Pre and post judgment interests where applicable;

7.   Award reasonable attorneys' fees and costs; and

8.   Grant such further relief as this Court deems just and proper.


**JURY DEMAND**


Plaintiff demands trial by jury on all issues so triable.


Dated: June 11, 2025

      Respectfully Submitted,

      **LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
      8950 SW 74 Ct., Suite 1804
      Miami, Fl 33156
      Telephone: (786) 220-2061
      Facsimile: (786) 220-2062
      Email: hrubio@rubiolegal.com
      Email: frubio@rubiolegal.com
      Email: info@rubiolegal.com

      By:*/s/ Humberto Rubio*
      **Humberto Rubio, Jr., Esq.**
      Florida Bar No. 36433
      **Felipe Rubio, Esq**.
      Florida Bar No. 123059

      ***Attorneys for Plaintiff***
      *Alejandro Mosqueda Paz*